UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| U.S. Bank National Association, as Trustee for the Holders of the Asset-backed Securities Corporation Home Equity Loan Trust, Series AEG 2006-HE1 Asset-backed Pass-through Certificates, Series AEG 2006-HE1,<br><br>    Plaintiff<br>v.<br><br>Fidelity National Title Group, Inc., et al.,<br><br>    Defendants | Case No.: 2:21-cv-0388-JAD-EJY<br><br>**Order Remanding Case to State Court**<br><br>[ECF No. 6] |

    Nevada's 2008 housing crash kindled thousands of quiet-title lawsuits between the homeowner associations that foreclosed on homes when the homeowner stopped paying assessments, the banks that held the first-trust deeds on those homes, and the investors who snapped those homes up at bargain-basement prices. Having consumed the state and federal courts for more than half a decade now, those cases have mostly burned out. But a phoenix has risen from their embers: the banks' lawsuits against the title insurers that issued policies when the mortgages were originated for failing to defend them in those quiet-title suits and cover their losses.

    This removed action is one of those coverage suits. Though U.S. Bank filed it in Nevada state court against forum and non-forum defendants, one of the title-insurer defendants removed this case before any defendant, including itself, had been served with process and despite the presence of a forum defendant whose existence should have precluded removal. The propriety of this practice—termed "snap removal"—is an issue that has divided the courts. The bank

challenges this practice in its motion for remand. Because I find that the removal here was improper, I grant the bank's motion and remand this case back to state court.

## Discussion

### I. Legal standard

28 U.S.C. § 1441(a) authorizes defendants to remove to federal court "any civil action brought in a [s]tate court of which the [U.S. District Courts] have original jurisdiction." But "[f]ederal courts are courts of limited jurisdiction."[1] So defendants seeking removal jurisdiction "always have the burden of establishing that removal is proper."[2] This is a heavy burden to carry because there is a "strong presumption against removal jurisdiction[,]" the removal statute is "strictly construe[d] against removal jurisdiction[,]" and "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance."[3]

### II. Analysis

Fidelity National Title Insurance Company removed this case on diversity-jurisdiction grounds.[4] Congress has created a limitation to diversity-based removal jurisdiction. 28 U.S.C. § 1441(b)(2) provides that "[a] civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." This limitation is called the forum-defendant rule, which is a "procedural, or non-jurisdictional, rule."[5]

---

[1] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).
[2] *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).
[3] *Id.*
[4] ECF No. 1 at 2 (removal petition).
[5] *Lively v. Wild Oats Mkts., Inc.*, 456 F.3d 933, 939 (9th Cir. 2006).

In an effort to skirt the forum-defendant rule, Fidelity removed this case before any defendant had been served with process. The bank moves for remand, arguing that the snap-removal practice violates the forum-defendant rule, which applies here because one of the named defendants, Fidelity National Title Agency of Nevada, Inc. ("Fidelity Nevada") is a Nevada citizen.[6] The removing defendant responds that removal before any defendant has been served to defeat the forum-defendant rule is a permissible practice and, regardless, the forum-defendant rule does not apply because the claims in this case have been fraudulently joined to defeat removal.[7]

### A.     Fidelity's snap removal was improper under 28 U.S.C. § 1441(b)(2).

Fidelity argues that snap removal is a permissible practice and a valid means to avoid the forum-defendant rule. It points out that every federal appellate jurist to consider the issue has concluded that the plain language of § 1441(b)(2) is unambiguous and permits snap removal[8] but acknowledges that the Ninth Circuit has not yet done so.[9] Recognizing that I—and all judges in this district (except for one) to have considered its removals in dozens of nearly identical suits—have repeatedly held that this practice is impermissible, the removing defendant urges me to reconsider and reverse my view.[10] The bank, on the other hand, contends that the interpretation that the removing defendant and its authorities offer cuts against the statute's language and purpose of preserving the plaintiff's choice of a state forum when at least one defendant is a

---

[6] ECF No. 6.

[7] ECF No. 16.

[8] *Id.* at 8–11 (citing, *e.g.*, *Texas Brine Co., LLC v. Am. Arb. Ass'n*, 955 F.3d 482 (5th Cir. 2020); *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699 (2d Cir. 2019); *Encompass Ins. Co. v. Stone Mansion Rest., Inc.*, 902 F.3d 147 (3d Cir. 2018)).

[9] *Id.* at 10.

[10] *Id.* at 6, n.4.

citizen of that state.[11]  The bank adds that each of the authorities that Fidelity cites is materially distinguishable and that nearly all judges in this district have overwhelmingly rebuffed the title insurers' snap-removal tactics.[12]

When interpreting federal statutes, "the starting point in discerning congressional intent is the existing statutory text."[13]  "It is well established that when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms."[14]  Courts are required to "presume that the legislature says in a statute what it means and means in a statute what it says there."[15]

The appellate courts that have determined that § 1141(b)(2)'s "plain language allows snap removal" before any defendant has been served did so by focusing on the "properly joined and served" phrase in the statute.[16]  But not all courts agree with that interpretation.  The "[d]istrict courts are split as to whether snap removals are appropriate," and "[t]here is ongoing debate on whether there is a trend in favor or against" the practice.[17]  Heavily cited in the against-snap-removal camp is U.S. District Judge Woodlock's decision in *Gentile v. Biogen Idec,*

---

[11] ECF No. 18 at 5–11.

[12] *Id*. at 2 & n.1.

[13] *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004).

[14] *Id.* (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)) (internal quotation marks omitted).

[15] *Bedroc Ltd. v. United States*, 541 U.S. 176, 183 (2004) (cleaned up).

[16] *Texas Brine Co.*, 955 F.3d at 486; *accord Gibbons*, 919 F.3d at 705 ("The statute plainly provides that an action may not be removed to federal court on the basis of diversity of citizenship once a home-state defendant has been "*properly* joined and *served*."); *Encompass Ins. Co.*, 902 F.3d at 152 (finding that the plain language of § 1441(b)(2) unambiguously "precludes removal on the basis of in-state citizenship only when the defendant has been properly joined and served").

[17] *Spreitzer Props., LLC v. Travelers Corp.*, __ F. Supp.3d __, 2022 WL 1137091, at *6 & n.3 (N.D. Iowa Apr. 18, 2022) (collecting cases).

*Inc.*, concluding that "the plain language of section 1441(b) requires at least one defendant to have been served before removal can be effected."[18] Judge Woodlock reached that conclusion by grammatically parsing the statute in its current and historical forms.[19] The statute now precludes removal "'if any of the parties in interest properly joined and served as defendants' is a forum defendant."[20] "'Any[]' . . . means 'one or more indiscriminately from all those of a kind[,]'"[21] and "[i]nherent in the definition is some number of the 'kind' from which the 'one or more' can be drawn."[22] "Thus the lack of a party properly joined and served . . . means that . . . [a] basic assumption embedded in the statute—that a party in interest had been served prior to removal—has not been met."[23] This interpretation bars snap removals.

The removing defendant insists that *Gentile* should be rejected in favor of the circuit rulings that approve of this tactic.[24] It also argues that the First Circuit's 2015 decision in *Novak v. Bank of New York Mellon Trust*[25] demonstrates that this 2013 decision by Judge Woodlock, a judge within the First Circuit, was wrongly decided.[26] But *Novak* addressed only the general question of "whether a defendant may seek to remove a state-court action to federal court before being formally served"; it did not grapple with the more specific issue of a non-forum

---

[18] *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313, 316, 318–19 (D. Mass. 2013) (quoting 28 U.S.C. § 1441(b) (2002)).
[19] *Id.* at 316 n.2, 318.
[20] *Id*. at 318.
[21] *Id.* (quoting *Webster's Third New Int'l Dictionary* 1536 (3d. ed. 1986)).
[22] *Id.*
[23] *Id.*
[24] ECF No. 16 at 8–10.
[25] *Novak v. Bank of New York Mellon Tr.*, 783 F.3d 910 (1st Cir. 2015).
[26] ECF No. 16 at 5–6.

defendant's snap removal in a diversity case with a forum codefendant.[27]  And after carefully considering the parties' authorities, I agree with the vast majority of the judges in this district that Judge Woodlock's interpretation "is the most cogent."[28]  Not only does it make grammatical sense, it is the interpretation most true to other canons of construction, the statute's purpose, and legislative intent.[29]

As Judge Woodlock reasoned, "[t]he removal power, and by extension the forum[-]defendant rule, is founded on the basic premise behind diversity jurisdiction itself"—"protect[ing] non-forum litigants from possible state[-]court bias in favor of forum-state litigants."[30]  But forum defendants do not suffer this bias and therefore do not need protection from it.  And the presence of a forum defendant presumably mitigates concerns of state-court bias toward the plaintiff.  So the forum-defendant "rule provides some measure of protection for a plaintiff's choice of forum" in certain circumstances.[31]  "[W]hen the overarching concerns

---

[27] *See Novak*, 783 F.3d at 911.

[28] *Deutsche Bank Nat'l Tr. Co. v. Fidelity Nat'l Title Grp., Inc.*, 2020 WL 7360680, at *3 (D. Nev. Dec. 14, 2020); *accord Deutsche Bank Nat'l Tr. Co. v. Old Republic Title Ins. Grp., Inc.*, 532 F. Supp. 3d 1004, 1013 (D. Nev. 2021) (lauding *Gentile* as "[o]ne of the most clear and influential explanations of this view"); *Carrington Mortg. Servs., LLC v. Ticor Title Nevada, Inc.*, 2020 WL 3892786, at *3 (D. Nev. July 10, 2020); *see also* ECF No. 18 at 2 n.1 (collecting cases).

[29] *See Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1183 (9th Cir. 2019) ("If the language is ambiguous, we look to canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent." (internal quotation marks omitted)).  To the extent that the Ninth Circuit's affirmance of this holding would create a circuit split, these are "compelling reason[s]" to do so.  *See Kelton Arms Condo. Owners Ass'n*, 346 F.3d 1190, 1192 (9th Cir. 2003) (cited at ECF No. 16 at 10).

[30] *Gentile*, 934 F. Supp. 2d at 319 (diving into the removal statute's history and purpose "for completeness of [Judge Woodlock's] explanation"); *accord Lively*, 456 F.3d at 940.

[31] *Gentile*, 934 F. Supp. 2d at 319.

about local bias against the defendant" are absent, the rule allows "a plaintiff to move for a remand of the case to the state court."[32]

Courts agree that § 1441(b)'s legislative history does not explain why "properly joined and served" was added to the statute.[33] "Supreme Court jurisprudence at the time of the 1948 revision . . . suggests"[34] that this language was added to prevent the gamesmanship of a plaintiff "blocking removal by joining as a defendant a resident party against whom it does not intend to proceed, and whom it does not even serve."[35] But with the advent of electronic dockets, sophisticated, monied, or hyper-vigilant defendants are monitoring court filings and removing before any defendant has been served, with the goal of eluding the forum-defendant rule. Congress would not have intended to prevent plaintiffs' removal-defeating games by creating a means for defendants to leapfrog over the forum-defendant rule.

The removal statute's purpose is better fostered by precluding removal until at least one defendant has been served. That way, "plaintiffs legitimately seeking to join a forum defendant face the modest burden of serving that defendant before any others."[36] A plaintiff who "serves a non-forum defendant before serving a forum" one "has effectively chosen to waive an objection to removal by a nimble non-forum defendant who thereafter removes the case" before it can be served.[37] And the non-forum defendant can still argue that the forum defendant was fraudulently

---

[32] *Id.*

[33] *See, e.g., id.* at 319–20; *Encompass Ins. Co.*, 902 F.3d at 153.

[34] *Gentile*, 934 F. Supp. 2d at 319–20.

[35] *Stan Winston Creatures, Inc. v. Toys "R" Us, Inc.*, 314 F. Supp. 2d 177, 181 (S.D.N.Y. 2003).

[36] *Gentile*, 934 F. Supp. 2d at 322.

[37] *Id.*

joined.[38]  This interpretation is faithful to the removal statute's entire purpose and consistent with its plain language, so I adopt it.  Applying this interpretation, I conclude that removal of this action was premature because it occurred before any defendant had been served.

**B.     The fraudulent-joinder doctrine does not provide a basis for remand.**

The removing defendant alternatively argues that this court must ignore the citizenship of Fidelity Nevada for jurisdiction purposes because this non-diverse defendant was fraudulently joined as a defendant.[39]  "Joinder of a non-diverse defendant is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for purposes of determining diversity," if the plaintiff fails to state a claim against that defendant "and the failure is obvious according to the settled rules of the state."[40]  The standard is lower than plausibility: "if there is a *possibility* that a state court would find that the complaint states a cause of action against" the non-diverse defendant, "the federal court must find that the joinder was proper and remand the case to the state court."[41]

The removing defendant argues that the bank's contract-based claims fail because it never submitted a claim to Fidelity Nevada "such that" it could have breached the policy, and the complaint is devoid of alter-ego allegations to give these claims another liability hook.[42]  But the bank has alleged that the breach was caused by both the removing defendant and Fidelity

---

[38] *Id.* at 322–23.

[39] ECF No. 16 at 10–15.

[40] *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001) (quoting *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987)).

[41] *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 548 (9th Cir. 2018) (quoting *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009)).

[42] ECF No. 16 at 12–13.

Nevada,[43] and the complaint contains numerous alter-ego allegations.[44]  With Nevada's lenient notice-pleading standard, I cannot conclude that there is no possibility that a state court would find that the complaint states a contract-based cause of action against Fidelity Nevada.

The bank also asserts claims against Fidelity Nevada for deceptive trade practices under NRS 41.600 and 598.0915 and unfair claims-handling practices under NRS 686A.310.[45]  The removing defendant argues that the statutes of limitation on these claims expired long before they were filed because the misrepresentations on which they are based occurred in 2005.[46]  But the bank argues, and a state court might conclude, that the deadlines for those claims were tolled during the underlying quiet-title case or until the bank discovered the misrepresentations and concealments, rendering these claims timely.  Based on this record, the removing defendant has not established that the bank's tort claims against Fidelity Nevada are time barred.  So I cannot conclude that Fidelity Nevada is a fraudulently joined defendant whose citizenship must be disregarded for purposes of determining whether this court has jurisdiction to retain this case.

### C. The court declines to award fees for improper removal.

Finally, I consider the bank's request under 28 U.S.C. § 1447(c) for an award of the fees and costs it incurred seeking remand.  The statute provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."[47]  The decision whether to award fees and costs associated with remand is

---

[43] ECF No. 1-1 at ¶ 115.
[44] *See id*. at ¶¶ 113–115, 144.
[45] *Id*. at 27–30.
[46] ECF No. 16 at 14.
[47] 28 U.S.C. § 1447(c).

left "to the discretion of the district court."[48] The propriety of snap removal is a question that has divided the courts and has not yet been resolved by the Ninth Circuit. Because the divergent approaches to this issue gave Fidelity an objectively reasonable basis to take a shot at removal, I decline the bank's request for an award of fees and costs.[49]

### Conclusion

IT IS THEREFORE ORDERED that the bank's motion for remand **[ECF No. 6] is GRANTED**.

IT IS FURTHER ORDERED that the Clerk of Court is directed to **REMAND this action back to the Eighth Judicial District Court for Clark County, Nevada, Department 16, Case No. A-21-830671-C**, and CLOSE THIS CASE.

_____
U.S. District Judge Jennifer A. Dorsey
December 27, 2022

---

[48] *Gotro v. R & B Realty Grp.*, 69 F.3d 1485, 1487 (9th Cir. 1995) (quoting *Moore v. Permanente Medical Grp., Inc.*, 981 F.2d 443, 446 (9th Cir. 1992)).

[49] The bank's failure to demonstrate the actual expenses that it incurred or what costs would be just in this situation give this court an additional, independent basis to deny this request. *See* L.R. 54-14 (describing the information that such a motion "must include" and explaining that the failure to include that information "may be deemed a consent to the denial of the motion").